**FILED**

APR 05 2023

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

9-CR-383
Judge Coleman
Magsitrate Judge Cole

| | |
|---|---|
| UNITED STATES OF AMERICA | **UNDER SEAL** |
| v. | 09 CR 383 |
| IVAN ARCHIVALDO GUZMAN SALAZAR (a/k/a "Luis," "Chapito," and "Tocayo"), | Hon. Sharon Johnson Coleman |
| JESUS ALFREDO GUZMAN SALAZAR (a/k/a "Alfredillo"), and | Violations: Title 21, United States Code Sections 841, 846, 848(a), (b) and (e)(1)(A), 952, 959, 963, and Title 18 United States Code, Sections 924(c)(1)(A), (c)(1)(B) and 1956(h) |
| JOAQUIN GUZMAN LOPEZ (a/k/a "El Guero," "Guero Moreno," and "Moreno") | |
| | **THIRTEENTH SUPERSEDING INDICTMENT** |

## COUNT ONE

The SPECIAL OCTOBER 2022 GRAND JURY charges:

1.      Beginning no later than in or about May 2008, and continuing until at least on or about April 5, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

IVAN ARCHIVALDO GUZMAN SALAZAR,
also known as "Luis," "Chapito," and "Tocayo,"
JESUS ALFREDO GUZMAN SALAZAR,
also known as "Alfredillo," and
JOAQUIN GUZMAN LOPEZ,
also known as "El Guero," "Guero Moreno," and "Moreno,"
(collectively with Ovidio Guzman Lopez, "Los Chapitos," "Los Menores," and "Los Chiquillos"),

defendants herein, did conspire with each other, with Joaquin Guzman Loera, Ismael Zambada Garcia, Damaso Lopez Nunez, and Ovidio Guzman Lopez, and with others

1

known and unknown to the Grand Jury, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, and 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

*Overview of the Conspiracy*

2.     It was part of the conspiracy that Joaquin Guzman Loera ("Chapo") and Ismael Zambada Garcia ("Mayo") were the co-leaders of a transnational drug trafficking organization based in Mexico known as the "Sinaloa Cartel." Under the leadership of Guzman Loera and Zambada Garcia, the Sinaloa Cartel operated as an affiliation of drug traffickers and money launderers located in multiple countries throughout the world who coordinated and pooled their collective resources in order to: (1) transport drugs from countries of supply in Central and South America to Mexico; (2) transport drugs through Mexico and into the United States; (3) distribute drugs to wholesale customers in the United States; and (4) collect, launder, and transfer the proceeds of drug trafficking.

3.     It was further part of the conspiracy that Guzman Loera and Zambada Garcia, and members and associates of the Sinaloa Cartel under them, including four

of Guzman Loera's sons, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, and Ovidio Guzman Lopez (collectively, "Los Chapitos," "Los Menores," and "Los Chiquillos"), coordinated their drug trafficking activities to import large quantities of cocaine from Central and South American countries, including Colombia, Ecuador, Venezuela, Peru, Panama, Costa Rica, Honduras, and Guatemala, to Mexico. Guzman Loera and Zambada Garcia, and members and associates of the Sinaloa Cartel under them, including defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, and Ovidio Guzman Lopez, coordinated the unloading of large shipments of cocaine in Mexico, and coordinated the transportation and storage of these shipments within Mexico. Guzman Loera and Zambada Garcia, and members and associates of the Sinaloa Cartel under them, including defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, and Ovidio Guzman Lopez, coordinated their drug trafficking activities to smuggle large quantities of cocaine, generally in shipments of hundreds or thousands of kilograms at a time, as well as multi-kilogram quantities of heroin, methamphetamine, and marijuana, from Mexico across the United States border, and then into and throughout the United States, including Chicago, Illinois, and elsewhere.

4.  It was further part of the conspiracy that, following Guzman Loera's arrest in 2016 and extradition in 2017, defendants IVAN ARCHIVALDO GUZMAN

3

SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, and Ovidio Guzman Lopez, assumed their father's former role as leaders of the Sinaloa Cartel, along with Zambada Garcia and Damaso Lopez Nunez.

5.    It was further part of the conspiracy that defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, and Ovidio Guzman Lopez, amassed greater control over the Sinaloa Cartel by threatening to cause violence, and causing violence, against Damaso Lopez Nunez and his family and associates, thereby becoming the conspiracy's principal leaders.

*Members of the Conspiracy*

6.    It was further part of the conspiracy that, prior to Guzman Loera's arrest in 2016, Guzman Loera and Zambada Garcia shared the leadership role in the Sinaloa Cartel. Guzman Loera and Zambada Garcia each negotiated the price for, and caused to be obtained, large quantities of cocaine from Central and South American countries, to be transported to Mexico, and caused multi-kilogram quantities of cocaine, heroin, methamphetamine, and marijuana to be transported from Mexico to the United States border, and then into and throughout the United States. Guzman Loera and Zambada Garcia each further caused drug proceeds to be laundered and transferred from the United States to Mexico and elsewhere.

7.    It was further part of the conspiracy that defendant IVAN ARCHIVALDO GUZMAN SALAZAR (a/k/a "Luis," "Chapito," and "Tocayo"), the son of Guzman Loera, acted as a logistical coordinator who, on behalf of Guzman Loera

4

and the Sinaloa Cartel's members and associates, caused multi-kilogram quantities of cocaine, heroin, methamphetamine, and marijuana to be transported from Mexico to the United States border, and then into and throughout the United States for distribution. IVAN ARCHIVALDO GUZMAN SALAZAR further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of the Sinaloa Cartel's members and associates. Following his father's arrest in 2016, IVAN ARCHIVALDO GUZMAN SALAZAR assumed a role as a leader and principal organizer of the Sinaloa Cartel.

8.     It was further part of the conspiracy that defendant JESUS ALFREDO GUZMAN SALAZAR (a/k/a "Alfredillo"), the son of Guzman Loera, acted as a logistical coordinator who, on behalf of Guzman Loera and the Sinaloa Cartel's members and associates, caused multi-kilogram quantities of cocaine, heroin, methamphetamine, and marijuana to be transported from Mexico to the United States border, and then into and throughout the United States for distribution. JESUS ALFREDO GUZMAN SALAZAR further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of the Sinaloa Cartel's members and associates. Following his father's arrest in 2016, JESUS ALFREDO GUZMAN SALAZAR assumed a role as a leader and principal organizer of the Sinaloa Cartel.

9.     It was further part of the conspiracy that defendant JOAQUIN GUZMAN LOPEZ (a/k/a "El Guero," "Guero Moreno," and "Moreno"), the son of

Guzman Loera, acted as a logistical coordinator who, on behalf of Guzman Loera and the Sinaloa Cartel's members and associates, caused multi-kilogram quantities of cocaine, heroin, methamphetamine, and marijuana to be transported from Mexico to the United States border, and then into and throughout the United States for distribution. JOAQUIN GUZMAN LOPEZ further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of the Sinaloa Cartel's members and associates. Following his father's arrest in 2016, JOAQUIN GUZMAN LOPEZ assumed a role as a leader and principal organizer of the Sinaloa Cartel.

10.     It was further part of the conspiracy that Ovidio Guzman Lopez, the son of Guzman Loera, acted as a logistical coordinator who, on behalf of Guzman Loera and the Sinaloa Cartel's members and associates, caused multi-kilogram quantities of cocaine, heroin, methamphetamine, and marijuana to be transported from Mexico to the United States border, and then into and throughout the United States for distribution. Ovidio Guzman Lopez further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of the Sinaloa Cartel's members and associates. Following his father's arrest in 2016, Ovidio Guzman Lopez assumed a role as a leader and principal organizer of the Sinaloa Cartel.

*Means and Methods of the Conspiracy*

11.     It was further part of the conspiracy that Guzman Loera and Zambada Garcia, and members and associates of the Sinaloa Cartel, including defendants

6

IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, and Ovidio Guzman Lopez, pooled their collective resources and coordinated their activities to cause large quantities of cocaine and other drugs and drug precursor chemicals to be imported from Central and South American countries, including Colombia, Ecuador, Venezuela, Peru, Panama, Costa Rica, Honduras, and Guatemala, and from elsewhere, to Mexico, using various means, including cargo aircraft, private aircraft, submarines and other submersible and semi-submersible vessels, container ships, supply vessels, go-fast boats, fishing vessels, buses, rail cars, tractor trailers, automobiles, and private and commercial interstate and foreign carriers. After the drugs and drug precursor chemicals arrived in Mexico, the conspirators used shared resources to unload and store the drugs in Mexico.

12.    It was further part of the conspiracy that Guzman Loera and Zambada Garcia, and members and associates of the Sinaloa Cartel, including defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, and Ovidio Guzman Lopez, used shared networks of couriers affiliated with the Sinaloa Cartel, and coordinated their activities to cause large quantities of cocaine, heroin, methamphetamine, and marijuana, at times in shipments of hundreds or thousands of kilograms, to be transported from various locations in Mexico to the United States border where the drugs were then stored in multiple warehouses, stash houses, and safe houses located in the areas of Tijuana, Mexicali, and elsewhere.

13.     It was further part of the conspiracy that Guzman Loera and Zambada Garcia, and members and associates of the Sinaloa Cartel, including defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, and Ovidio Guzman Lopez, used shared networks of couriers affiliated with the Sinaloa Cartel, and coordinated their activities to cause drugs to be smuggled across the United States-Mexico border using multiple means, including through the use of vehicles, rail cars, and tunnels.

14.     It was further part of the conspiracy that Guzman Loera and Zambada Garcia, and members and associates of the Sinaloa Cartel, including defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, and Ovidio Guzman Lopez, used shared networks of couriers and stash house operators affiliated with the Sinaloa Cartel, and coordinated their activities to cause drugs to be unloaded and stored at multiple stash house, safe house, and warehouse locations in Southern California and elsewhere.

15.     It was further part of the conspiracy that Guzman Loera and Zambada Garcia, and members and associates of the Sinaloa Cartel, including defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, and Ovidio Guzman Lopez, used shared networks of couriers affiliated with the Sinaloa Cartel to cause cocaine, heroin, methamphetamine, and marijuana to be transported throughout the United States, including to Chicago, Illinois, using various means, including cars, trucks, rail

cars, and private and commercial interstate carriers. Members of the conspiracy directed the drugs to be stored in various stash houses and warehouses and then provided and distributed to additional members and associates of the Sinaloa Cartel, as well to wholesale customers, on consignment, without requiring payment at the time of delivery, in multiple locations.

16. It was further part of the conspiracy that the cocaine, heroin, methamphetamine, and marijuana caused to be distributed by Guzman Loera, Zambada Garcia, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, Ovidio Guzman Lopez, and other members and associates of the Sinaloa Cartel, was further sold and distributed to additional wholesale customers in the greater Chicago, Illinois, area, and elsewhere in the United States and Canada.

17. It was further part of the conspiracy that Guzman Loera and Zambada Garcia, and members and associates of the Sinaloa Cartel, including defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, and Ovidio Guzman Lopez, used shared networks of money couriers and money launderers to cause drug proceeds to be collected from customers, counted, packaged, and transferred and laundered from the United States to Mexico, Colombia, and elsewhere using multiple means, including bulk cash smuggling, structured bank deposits, wire transfers, currency exchange transfers, alternative credit-based systems used to transfer money without the use of wires or other traditional means, goods-based systems in which items,

9

including cars, helicopters, and airplanes, were purchased in one location and transferred to another location, and other methods.

18.    It was further part of the conspiracy that Guzman Loera, Zambada Garcia, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, Ovidio Guzman Lopez, and other members and associates of the Sinaloa Cartel, used various means to communicate with each other in order to coordinate their drug trafficking activities, including cellular telephones, satellite telephones, computers, instant messaging applications on smart phones, and email accounts.

19.    It was further part of the conspiracy that Guzman Loera, Zambada Garcia, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, Ovidio Guzman Lopez, and other members and associates of the Sinaloa Cartel, used coded language and other means to misrepresent, conceal and hide, and to cause to be misrepresented, concealed and hidden, the drug trafficking activities of the conspiracy, and to avoid detection and apprehension by law enforcement authorities.

20.    It was further part of the conspiracy that Guzman Loera, Zambada Garcia, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, Ovidio Guzman Lopez, and other members and associates of the Sinaloa Cartel, possessed with intent to distribute large quantities of drugs in various locations throughout the United States and the world, including the possession of drugs later seized by law enforcement

officials in the United States, including in Chicago and elsewhere in the Northern District of Illinois, the Central District of California, the Southern District of California, the Northern District of California, the District of Arizona, the Western District of Texas, and elsewhere.

21.     It was further part of the conspiracy that Guzman Loera, Zambada Garcia, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, Ovidio Guzman Lopez, and other members and associates of the Sinaloa Cartel caused drug proceeds to be laundered and transferred in various locations throughout the United States and the world, including currency later seized by law enforcement in the United States, including in Chicago and elsewhere in the Northern District of Illinois, and Los Angeles, California, and elsewhere.

*Acts of Violence in Furtherance of the Conspiracy*

22.     It was further part of the conspiracy that Guzman Loera, Zambada Garcia, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, Ovidio Guzman Lopez, and other members and associates of the Sinaloa Cartel used, and caused to be used, various means to evade and escape law enforcement and military personnel—including on or about October 17, 2019, at Culiacan in the Mexican State of Sinaloa—and to protect their drug distribution activities, including: obtaining guns and other weapons; bribing corrupt public officials; and inciting violence, engaging in violence, and threatening violence, including murder, kidnapping, assault, and battery,

including against law enforcement, rival drug traffickers, and members of their own drug trafficking organization. It was further part of the conspiracy that Guzman Loera, Zambada Garcia, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, Ovidio Guzman Lopez, and members and associates of the Sinaloa Cartel under them used various means to ensure they received payment for their drug distribution activities, including violence and threats of violence.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1. Paragraphs 2 through 22 of Count One of this Superseding Indictment are incorporated here.

2. Beginning no later than in or about May 2008 and continuing until at least on or about April 5, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

IVAN ARCHIVALDO GUZMAN SALAZAR,
also known as "Luis," "Chapito," and "Tocayo,"
JESUS ALFREDO GUZMAN SALAZAR,
also known as "Alfredillo," and
JOAQUIN GUZMAN LOPEZ,
also known as, "El Guero," "Guero Moreno," and "Moreno,"
(collectively with Ovidio Guzman Lopez, "Los Chapitos," "Los Menores," and "Los Chiquillos"),

defendants herein, together with others, both known and unknown to the Grand Jury, including Ovidio Guzman Lopez, did knowingly and intentionally engage in a continuing criminal enterprise, in that the defendants, IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, committed violations of Title 21, United States Code, Sections 841(a), 848(e), 952(a), 959(a), 960, and 963, including Violations One through Thirty-Six set forth below, which violations were part of a continuing series of violations of those statutes undertaken by the defendants, IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, in concert with five or more other persons, including Ovidio Guzman Lopez, with respect to whom the defendants, IVAN ARCHIVALDO GUZMAN SALAZAR,

JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, occupied supervisory and management positions, and were each one of several principal administrators, organizers, and leaders of the continuing criminal enterprise, and from which continuing series of violations the defendants, IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, obtained substantial income and resources, and which continuing criminal enterprise received in excess of $10 million in gross receipts during one or more twelve-month period for the manufacture, importation, and distribution of heroin, cocaine, methamphetamine, and marijuana. The violations involved at least 300 times the quantity of a substance described in Section 841(b)(1)(B) of Title 21, United States Code, namely, 30 kilograms or more of a mixture and substance containing a detectable amount of heroin, 150 kilograms or more of a mixture and substance containing a detectable amount of cocaine, 15 kilograms or more of a mixture and substance containing a detectable amount of methamphetamine, and 30,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana. The continuing series of violations, as defined by Title 21, United States Code, Section 848(c), included Violations One through Thirty-Six set forth below:

Violation One

3.      Between in or about May 2008 and September 2008, in Mexico, the Pacific Ocean, the United States, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally distribute a controlled substance,

14

namely, approximately 10,000 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

### Violation Two

4.     In or about September 2008, in Colombia, Mexico, the Pacific Ocean, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally distribute a controlled substance, namely, approximately 4,716 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

### Violation Three

5.     On or about November 13, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally distribute a controlled substance, namely, approximately 20 kilograms of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

### Violation Four

6.      In or about February 2009, in Mexico, the Pacific Ocean, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

### Violation Five

7.      On or about June 22, 2009, in the Central District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 96 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

### Violation Six

8.      In or about September and October 2009, in Quito, Ecuador, Mexico, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally distribute a controlled substance, namely, approximately 8,031

kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

Violation Seven

9.    On or about September 27, 2013, in the District of Arizona, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 30 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

Violation Eight

10.    On or about October 8, 2013, in the District of Arizona, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 83.46 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

<u>Violation Nine</u>

11.    On or about October 26, 2013, in the Southern District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 2,700 kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

<u>Violation Ten</u>

12.    In or about January 2014, in Sonora, Mexico, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally distribute a controlled substance, namely, approximately 20,000 kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, and approximately 30 kilograms of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

<u>Violation Eleven</u>

13.    In or about January 2014, in Ipiales, Colombia, Mexico, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO

GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally distribute a controlled substance, namely, approximately 403 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

Violations Twelve through Sixteen

14.     In or about the dates below, in Sonora, Mexico, the District of Arizona, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally import into the United States from any place outside thereof, namely, Mexico, a controlled substance, namely, the approximate quantities set forth below of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, each instance set forth below constituting a violation of Title 21, United States Code, Section 952(a), and Title 18, United States Code, Section 2.

| Violation | Date | Approximate Quantity |
|---|---|---|
| 12 | October 2013 | 110.06 kilograms |
| 13 | January 2014 | 83.15 kilograms |
| 14 | January 2014 | 113.85 kilograms |
| 15 | February 2014 | 267.65 kilograms |
| 16 | February 2014 | 21 kilograms |

### Violation Seventeen

15.    On or about February 8, 2014, in the Southern District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 1,247 kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

### Violation Eighteen

16.    On or about March 6 and 7, 2016, in the Southern District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally import into the United States from any place outside thereof, namely, Mexico, a controlled substance, namely, approximately 625 kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 952(a), and Title 18, United States Code, Section 2.

### Violation Nineteen

17.    On or about March 23, 2016, in the Southern District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally import into the United States from any place outside thereof, namely, Mexico, a controlled substance, namely, approximately 695 kilograms of a

mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 952(a), and Title 18, United States Code, Section 2.

### Violation Twenty

18.     On or about May 24, 2016, in the Central District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 8.63 kilograms of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, and approximately 454 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

### Violation Twenty-One

19.     On or about August 24, 2016, in the District of New Jersey, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 6 kilograms of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and approximately 1 kilogram of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, Untied States Code, Section 2.

### Violation Twenty-Two

20.     On or about October 20, 2016, at San Diego, in the Southern District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 2,038 kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

### Violation Twenty-Three

21.     On or about October 20, 2016, at San Marcos, in the Southern District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 6,277 kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

### Violation Twenty-Four

22.     In or about June 2019, in Sinaloa, Mexico, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally

manufacture a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

### Violation Twenty-Five

23.　On or about August 19, 2020, in Mexico, the Central District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally import into the United States from any place outside thereof, namely, Mexico, any controlled substance, namely, approximately 1,437 kilograms of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 952(a), and Title 18, United States Code, Section 2.

### Violation Twenty-Six

24.　On or about October 15, 2020, in the Western District of Texas, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 232 kilograms of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States

Code, Section 2.

Violation Twenty-Seven

25.    In or about November 2020, in Mexico, the Northern District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally import into the United States from any place outside thereof, namely, Mexico, any controlled substance, namely, approximately 1,363 kilograms of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 952(a), and Title 18, United States Code, Section 2.

Violation Twenty-Eight

26.    On or about January 15, 2021, at Cudahy, in the Central District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 1 kilogram of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, and approximately 3.6 kilograms of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

Violation Twenty-Nine

27.    On or about March 30, 2021, at El Paso, near 8401 Gateway Boulevard

W, in the Western District of Texas, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 22.77 kilograms of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

### Violation Thirty

28.    On or about March 30, 2021, at El Paso, near 6565 Edgemere Boulevard, in the Western District of Texas, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally possess with intent to distribute a controlled substance, namely, approximately 42.47 kilograms of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

### Violation Thirty-One

29.    In or about July 2021, in Mexico, the Northern District of California, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally import into the United States from any place outside thereof, namely, Mexico, any controlled substance, namely, approximately 2,272 kilograms of

a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 952(a), and Title 18, United States Code, Section 2.

Violation Thirty-Two

30.     In or about October 2021, in Mexico, the Pacific Ocean, and elsewhere, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ did knowingly and intentionally distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

Violation Thirty-Three

31.     In or about October 2010, in Sinaloa, Mexico, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, namely, the crimes charged in Counts One and Three of this Superseding Indictment, did knowingly and intentionally kill and command, induce, procure, and cause the intentional killing of one or more persons, namely, Israel Rincon Martinez, also known as "Guacho," and such killing did result, in violation of Title 21, United States

Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

Violation Thirty-Four

32.     On or about December 30, 2018, in Sinaloa, Mexico, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, namely, the crimes charged in Counts One and Three of this Superseding Indictment, did knowingly and intentionally kill and command, induce, procure, and cause the intentional killing of one or more persons, namely, Jesus Antonio Munoz Parra, also known as "Montana," and such killing did result, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

Violation Thirty-Five

33.     On or about May 6, 2021, at Phoenix, in the District of Arizona, and in Mexico, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, namely, the crimes charged in Counts One and Three of this Superseding Indictment, did knowingly and intentionally kill and command, induce, procure, and cause the intentional killing of one or more persons, namely, Mario Nungaray Bobadilla, also known as "Liebre," and such killing did result, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

<u>Violation Thirty-Six</u>

34.     Between on or about October 17, 2021, and October 21, 2021, in Jalisco and Sonora, Mexico, defendants IVAN ARCHIVALDO GUZMAN SALAZAR, JESUS ALFREDO GUZMAN SALAZAR, and JOAQUIN GUZMAN LOPEZ, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, namely, the crimes charged in Counts One and Three of this Superseding Indictment, did knowingly and intentionally kill and command, induce, procure, and cause the intentional killing of one or more persons, namely, Geovanni Hurtado Vicente, also known as "Amigo," and such killing did result, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Sections 848(a), 848(b), and 848(e)(1)(A).

## COUNT THREE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     Paragraphs 2 through 22 of Count One of this Superseding Indictment are incorporated here.

2.     Beginning no later than in or about May 2008, and continuing until at least on or about April 5, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

IVAN ARCHIVALDO GUZMAN SALAZAR,
also known as "Luis," "Chapito," and "Tocayo,"
JESUS ALFREDO GUZMAN SALAZAR,
also known as "Alfredillo," and
JOAQUIN GUZMAN LOPEZ,
also known as, "El Guero," "Guero Moreno," and "Moreno,"
(collectively with Ovidio Guzman Lopez, "Los Chapitos," "Los Menores," and "Los Chiquillos"),

defendants herein, did conspire with each other, with Joaquin Guzman Loera, Ismael Zambada Garcia, Damaso Lopez Nunez, and Ovidio Guzman Lopez, and with others known and unknown to the Grand Jury:

(a)     to knowingly and intentionally import into the United States from any place outside the United States, namely, Mexico, a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, and 1,000 kilograms or more of a mixture and substance containing a detectable amount of

29

marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 952(a); and

      (b)    to knowingly and intentionally manufacture and distribute a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, and 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a);

      In violation of Title 21, United States Code, Section 963.

## COUNT FOUR

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

On or about November 13, 2008, at Northlake, in the Northern District of Illinois, Eastern Division,

JESUS ALFREDO GUZMAN SALAZAR,
also known as "Alfredillo,"

defendant herein, did knowingly and intentionally distribute a controlled substance, namely, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

## COUNT FIVE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      Paragraphs 2 through 22 of Count One of this Superseding Indictment are incorporated here.

2.      Beginning in or about May 2008, and continuing until at least on or about April 5, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

IVAN ARCHIVALDO GUZMAN SALAZAR,
also known as "Luis," "Chapito," and "Tocayo,"
JESUS ALFREDO GUZMAN SALAZAR,
also known as "Alfredillo," and
JOAQUIN GUZMAN LOPEZ,
also known as, "El Guero," "Guero Moreno," and "Moreno,"
(collectively with Ovidio Guzman Lopez, "Los Chapitos," "Los Menores," and "Los Chiquillos"),

defendants herein, did knowingly conspire with each other, Ovidio Guzman Lopez, and with persons known and unknown to the Grand Jury, to commit offenses in violation of Title 18, United States Code, Section 1956, namely:

(a)      to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting such financial transaction knew that the property involved in the financial transaction represented

the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(b)     to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside of the United States with the intent to promote the carrying on of a specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(c)     to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i);

In violation of Title 18, United States Code, Section 1956(h).

33

## COUNT SIX

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      Paragraphs 2 through 22 of Count One of this Superseding Indictment are incorporated here.

2.      Beginning in or around May 2008 and continuing until at least on or about April 5, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

IVAN ARCHIVALDO GUZMAN SALAZAR,
also known as "Luis," "Chapito," and "Tocayo,"

defendant herein, did knowingly use, carry, brandish, and discharge a firearm, including a machinegun, as defined in Title 26, United States Code, Section 5845(b), during and in relation to a drug trafficking crime for which defendant may be prosecuted in a court of the United States, namely, the conspiracy to possess with intent to distribute and distribute a controlled substance, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Superseding Indictment, and did knowingly possess, brandish, and discharge a firearm, including a machinegun, as defined in Title 26, United States Code, Section 5845(b), in furtherance of such drug trafficking crime;

In violation of Title 18, United States Code, Section 924(c)(1)(A) and (c)(1)(B).

34

## COUNT SEVEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.    Paragraphs 2 through 22 of Count One of this Superseding Indictment are incorporated here.

2.    Beginning in or around May 2008 and continuing until at least on or about April 5, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JESUS ALFREDO GUZMAN SALAZAR,
also known as "Alfredillo,"

defendant herein, did knowingly use, carry, brandish, and discharge a firearm, including a machinegun, as defined in Title 26, United States Code, Section 5845(b), during and in relation to a drug trafficking crime for which defendant may be prosecuted in a court of the United States, namely, the conspiracy to possess with intent to distribute and distribute a controlled substance, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Superseding Indictment, and did knowingly possess, brandish, and discharge a firearm, including a machinegun, as defined in Title 26, United States Code, Section 5845(b), in furtherance of such drug trafficking crime;

In violation of Title 18, United States Code, Section 924(c)(1)(A) and (c)(1)(B).

## COUNT EIGHT

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     Paragraphs 2 through 22 of Count One of this Superseding Indictment are incorporated here.

2.     Beginning in or around May 2008 and continuing until at least on or about April 5, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOAQUIN GUZMAN LOPEZ,
also known as, "El Guero," "Guero Moreno," and "Moreno,"

defendant herein, did knowingly use, carry, brandish, and discharge a firearm, including a machinegun, as defined in Title 26, United States Code, Section 5845(b), during and in relation to a drug trafficking crime for which defendant may be prosecuted in a court of the United States, namely, the conspiracy to possess with intent to distribute and distribute a controlled substance, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Superseding Indictment, and did knowingly possess, brandish, and discharge a firearm, including a machinegun, as defined in Title 26, United States Code, Section 5845(b), in furtherance of such drug trafficking crime;

In violation of Title 18, United States Code, Section 924(c)(1)(A) and (c)(1)(B).

## FORFEITURE ALLEGATION

The SPECIAL OCTOBER 2022 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 21, United States Code, Sections 841, 846, 848, or 963, as set forth in this Superseding Indictment, defendants shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained, directly and indirectly, as a result of the offense; and any property used, and intended to be used, in any manner and part, to commit and to facilitate commission of the offense, as provided in Title 21, United States Code, Sections 853(a) and 970.

2.      In addition, upon conviction of an offense in violation of Title 18, United States Code, Section 1956, as set forth in this Superseding Indictment, defendants shall forfeit to the United States of America, any property involved in such offense, and any property traceable to such property, as provided in Title 18, United States Code, Section 982(a)(1).

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States, Code Section 853(p), and Title 18, United States Code, Section 982(b).

A TRUE BILL:

_____

FOREPERSON

_____
MORRIS PASQUAL
ACTING UNITED STATES ATTORNEY
NORTHERN DISTRICT OF ILLINOIS

_____
RANDY S. GROSSMAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF CALIFORNIA

_____
MARLON COBAR, ACTING CHIEF
NARCOTIC & DANGEROUS DRUG
SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE